## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JANET E. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-CV-0128-CVE-PJC |
| | ) | |
| FREDDIE'S STEAK HOUSE # 3, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment (Dkt. # 49) filed by defendant Freddie's Incorporated ("Freddie's Inc." or "defendant"). Plaintiff Janet E. Smith ("Smith" or "plaintiff") filed an amended complaint on June 17, 2004, alleging sexual harassment, sexual discrimination, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1981a.[1]  Prior to filing this suit, plaintiff timely filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Oklahoma Human Rights Commission and received her right-to-sue letter.  Defendant seeks summary judgment on all of plaintiff's claims.

In support of its motion for summary judgment, defendant argues that Smith cannot prevail on her hostile work environment claim because no reasonable jury could find that the conduct complained of was unwelcome to her, nor could a reasonable jury find that Smith subjectively perceived the conduct as offensive.  Defendant also argues that plaintiff cannot establish that the environment was objectively offensive, but concedes that plaintiff's deposition testimony raises

---

[1]     Plaintiff's original Complaint incorrectly named Freddie's Steak House # 3 as defendant. The complaint was amended to add defendant's correct name, Freddie's Incorporated.

genuine issues of material fact in that regard.  Defendant further argues that Smith cannot establish a *prima facie* case of gender discrimination or retaliatory discharge in connection with her termination from employment at Freddie's Steak House ("Freddie's").  Defendant also argues that, if plaintiff is able to prevail on any of her claims, her damages should be limited.  Finally, defendant argues that summary judgment is appropriate because the Plaintiff's Response to Motion for Summary Judgment (Dkt. ## 55, 56) fails to comply with Northern District Rules 7.1 and 56.1.

## I.

As a preliminary matter, the Court will address defendant's argument that, due to plaintiff's failure to comply with Local Rules 7.1 and 56.1, the Court should enter summary judgment in favor of defendant and should deem all facts in defendant's motion for summary judgment confessed.[2]

On April 4, 2005, the day her response was due, plaintiff filed a motion (Dkt. # 50) requesting an extension of ten (10) days to file her response.  Defendant did not oppose this motion. The Court granted plaintiff's motion by order (Dkt. # 53), thereby making plaintiff's response due on April 14, 2005.  Plaintiff did not file her response until April 18, 2005 (Dkt. # 55).  It appears that when Plaintiff did file her response, she neglected to attach her exhibits thereto, because Plaintiff filed a "supplement" on April 19, 2005 (Dkt. # 56), which consisted of her response and the attached exhibits**.**  Plaintiff did not request permission to file her response out-of-time, nor did she ask leave to file the supplement to her response.

---

[2]     Defendant, in its reply, cites former Local Rule 7.1(C) for the proposition that plaintiff should be sanctioned for her failure to file a timely response to the motion for summary judgment.  However, under the new Local Rules, which became effective March 2, 2005, any such violation would fall under Local Rule 7.1(f), "Unopposed Dispositive Motions." Thus, the Court will apply the new rule in considering defendant's argument.

Under former Local Rule 7.1(C), the rule invoked by defendant, the failure to timely respond authorized the Court, in its discretion, to deem the matter confessed and enter the relief requested. However, the new Local Rule 7.1(f) provides,

> If a dispositive motion is not opposed, the Court may in its discretion either (1) provide an additional eleven days, after which the case will be dismissed or the motion will be deemed confessed, as appropriate, or, (2) in the event the moving party has filed a motion for confession of judgment, such motion may be granted following eleven days after filing.  In either event, in the discretion of the Court, the party failing to respond shall be subject to sanctions, including but not limited to all attorney fees and costs incurred by the moving party in connection with such failure to timely oppose the motion.

N.D. LCvR 7.1(f).

In the instant case, the Court notes that plaintiff failed to file a timely response.  However, plaintiff did file a response and therefore defendant's motion for summary judgment is not unopposed.  The Court finds that, under the new local rule, the relief requested by defendant is not warranted in this case.[3]  In light of the fact that plaintiff's response was filed within four days of its due date and was supplemented with exhibits within a reasonable time, the Court will consider the

---

[3]     Even if the Court could grant the relief requested by defendant as a sanction under the new local rule, the Court finds that such relief would not be proper in this case.  The Court recognizes that under Tenth Circuit law, it could not grant summary judgment based solely on a party's failure to respond within the time period set forth in the local rule without considering whether the movant has met its burden of production to demonstrate that no material issue of fact remains for trial, as required by Fed. R. Civ. P. 56(c), or whether summary judgment is appropriate as a sanction.  Murray v. City of Tahlequah, Oklahoma, 312 F.3d 1196, 1200 (10th Cir. 2002); Reed v. Nellco Puritan Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002).  In the instant case, the Court finds that even if it were not to consider plaintiff's response, defendant has not demonstrated that there are no material issues of fact with regard to Smith's hostile work environments claims, as discussed more fully below.

3

response and supplement.[4]  Because defendant has not requested attorney fees or costs in connection with plaintiff's late filing, the Court will not consider such relief.

The Court will now address defendant's claim that plaintiff violated Local Rule 56.1.[5]  That rule provides:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist.  Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed.  All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

N.D. LCvR 56.1(c) (2005).

In the instant case, plaintiff's response begins with a "Statement of Material Facts in Dispute," which consists of a numbered list of facts that plaintiff considers to be in dispute.  At the end of each fact, plaintiff states that her fact disputes certain numbered facts contained in the defendant's statement of facts (e.g., "This disputes defendant's fact 15.").  The Court notes that the manner in which plaintiff chose to set forth her disputed facts makes it difficult to determine which facts in defendant's motion were indeed in dispute, and does not appear to be in full compliance with the local rule, as it does not clearly state all material facts which are allegedly in dispute.  However,

---

[4]      For the sake of clarity, the Court will consider the supplemental response with the attached exhibits (Dkt. # 56) and will refer to that document as plaintiff's response.

[5]      Again, defendant cites to the former Local Rule, Rule 56.1(B).  Because the new local rules are in effect, the Court will refer to the new rule, Local Rule 56.1(c), and will consider defendant's arguments under that rule.

4

in the interest of justice, the Court will overlook plaintiff's technical violation of the rule and will consider plaintiff's response.[6]

## II.

Freddie's Steakhouse is an eating establishment and bar located in Mannford, Oklahoma. Freddie's is owned and operated by Rickey Saliba ("Saliba") and his wife, Jerri Saliba.  Smith was hired as a waitress and bartender at Freddie's in late March 2001, and began working soon thereafter.  Plaintiff worked for Freddie's as a bartender and waitress until August 12, 2001, when she was terminated.  There is no evidence in the record that Freddie's had in place a formal sexual harassment policy during the period of plaintiff's employment.

All of Smith's sexual harassment claims center on the conduct of Saliba towards Smith and the other women employed at Freddie's.  As stated above, Saliba owned and operated Freddie's with his wife.  Saliba also did much of the cooking for the restaurant, and was present at the restaurant on a daily basis.  Smith testified in her deposition that, throughout her employment at Freddie's, Saliba directed sexual comments and abusive language both to Smith directly and to the other female employees, and that Saliba touched her in a sexually offensive way on several occasions.

With regard to Saliba's use of sexually offensive and demeaning language, Smith testified that, over the course of her employment, she and the other female employees were called  "bitch," "whore," and "cunt" by Saliba on a regular basis.  (See Dep. of Pl., Pl's Resp. to Mot. for Summ. J., Dkt. # 56, Ex. A, Part 2, 3 at 120, 122, 151, 196.)  At her deposition, Smith recalled one specific instance where Saliba called Susan Parry ("Parry"), a waitress and assistant manager, "a cunt and

---

[6]      In the recitation of the facts below, the Court will indicate when a fact is deemed admitted by plaintiff based on plaintiff's response and the exhibits attached thereto.

everything else in the kitchen in front of all of the wait staff." (Dep. of Pl., Def.'s Mot. for Summ. J., Dkt. # 49, Ex. B at 122.) Smith also testified to an occasion when Saliba brought his brother into the restaurant and introduced him to Smith, saying, "See my new bitch, ain't she pretty. She's got bigger titties than any of your girls." (Dep. of Pl., Pl's Resp. to Mot. for Summ. J., Dkt. # 56, Ex. A, Part 3 at 196.) Defendant denies Smith's allegations in this regard.

Smith also testified that Saliba made sexual comments about her anatomy and sexually propositioned her on numerous occasions. Smith testified in her deposition to one instance when Saliba told her, "If I stick my Lebanese penis inside you, you'd never go back to white guys." (Dep. of Pl., Def.'s Mot. for Summ. J., Dkt. # 49, Ex. B at 133.) She also claims that one afternoon, in between the lunch and dinner shifts, Saliba asked her and a few other waitresses whether they were wearing underwear. Smith testified that on another occasion, when she and Saliba were in his office to get towels, Saliba talked about his prowess with regard to oral sex. In addition to the specific instances Smith recalled at her deposition, Smith also testified that Saliba "offered oral sex I don't know how many times, and every time he asked about oral sex, I just kind of laughed and told him no." (Dep. of Pl., Pl's Resp. to Mot. for Summ. J., Dkt. # 56, Ex. A, Part 3 at 193.) Smith also claims that, on the last night she worked at Freddie's, Saliba asked to see her bra, and became angry when she refused, saying, "Stupid bitch, you're just a tease, you're just a fucking cunt." (Dep. of Pl., Def.'s Mot. for Summ. J., Dkt. # 49, Ex. B at 142.)[7] Finally, Plaintiff alleges that throughout the course of her employment Saliba made numerous sexual comments to her, including references

---

[7]     However, Smith also testified that, later that evening, she and Saliba had a friendly conversation about her plans to take a trip to Dallas, Texas the next day.

6

to her breasts and buttocks.  Defendant denies that Saliba made comments of a sexual nature to Smith, or subjected Smith to sexual harassment in any way.

With regard to her claims that Saliba also engaged in offensive touching, Smith testified that, on the occasion when Saliba asked whether she was wearing underwear, he touched her on her buttocks, under her shorts, in an attempt to feel.  Although she did not testify to specific instances, Smith also claims that on several occasions, Saliba pushed up against her, slapped her buttocks, pinched her buttocks or upper thighs, or put his hands under her shorts.  At her deposition, Smith testified that the more she resisted Saliba's sexual overtures, the more verbally abusive he became. Defendant also denies that Saliba ever touched Smith in a sexually offensive or harassing manner.

Plaintiff admits that she never reported any sexual harassment to Jerri Saliba.  In this regard, Smith testified that she did not complain to Jerri Saliba because she felt sorry for her due to the way her husband treated her.  Smith further testified that she did discuss her complaints with Parry, but that she did not bring a formal complaint to Parry.  Smith stated that she and Parry were discussing Saliba's abusive behavior and questioning to whom they might complain "when [Saliba] owns it and he runs it and he's the one cussing you?"  (Dep. of Pl., Def.'s Mot. for Summ. J., Dkt. # 49, Ex. B at 122.)  Plaintiff does claim, however, that she complained to Saliba directly, although she does not testify as to a specific instance when that occurred.

As noted above, defendant denies plaintiff's allegations.  In support of its position, defendant presented affidavits from several female employees, stating that they never witnessed Saliba sexually harass Smith, and that they doubt that such events occurred.  While plaintiff does not dispute that those witnesses so stated, during her deposition she contested the veracity of their statements.

7

Defendant also points out that Smith engaged in provocative behavior while working at Freddie's and used foul language on a regular basis.  Plaintiff admits to using the word "fuck" at the restaurant, and stated that the word was commonly used at Freddie's.  Smith testified that whether she found the word offensive depended upon the context in which the word was used.  One frequent patron of Freddie's, David Smith, affied that he often heard Smith use foul language in the restaurant.  Plaintiff also admits that, on one occasion, she may have told some of the waitresses that she sometimes cleaned her house in the nude, but denies making such a comment to Saliba.  Smith also admits that on another occasion, she may have said to Saliba, "You wouldn't believe how good my breasts look in this shirt."  (Dep. of Pl., Def.'s Mot. for Summ. J., Dkt. # 49, Ex. B at 135.)

Defendant also points out plaintiff's admissions with regard to her provocative dress and behavior.  The waitresses at Freddie's wore a uniform consisting of a Freddie's tee shirt and khaki pants or shorts.  In her deposition, Smith admitted to wearing short shorts, but stated that her shorts were not shorter than those worn by the other waitresses.  She further stated that her shorts did not reveal her buttocks unless she bent over (as was the case with the other waitresses' shorts), so she did not bend over at work unless she was behind the bar where no one could see her.  Smith also admits to cutting off her Freddie's tee shirt to reveal part of her stomach.  However, Smith denies defendant's allegations that she tied the tee shirt in the front to reveal most of her breasts and stomach and altered her tee shirt to make it more revealing.  Instead, she claims that she cut the shirt and  tied it in the back because it was too big otherwise.  Smith also admits that at the end of the shift she sometimes changed into shirts that revealed cleavage, but stated that Saliba always approved her clothing before she changed if she was still on duty.

Bernie Fugate ("Fugate"), a frequent Freddie's customer, affied that she observed Parry comment on Smith's clothing on several occasions, and that this would cause Smith to become angry.  Plaintiff asserts that no one ever approached her about her clothing to complain that it was too provocative.  Smith claims that the only time anyone spoke to her about her clothing was when Parry questioned her about a pair of shorts Smith was wearing.  Smith asserts that Parry questioned her about the shorts because the shorts were white, rather than khaki.  Dawn Drevs ("Drevs"), who worked in the kitchen while Smith was employed at Freddie's, affied that Smith came to work "wearing revealing low cut shirts, and flirted with many men at the bar to make tips."  (Aff. of Dawn Drevs, Def.'s Mot for Summ. J., Dkt. # 49, Ex. N.)  Plaintiff did not contest this statement in her response.

As to Smith's provocative behavior, she admits that she flirted with male customers to obtain better tips.  Smith also admits that on one occasion, she allowed a customer to place a fifty-dollar bill in her cleavage.  Smith testified at her deposition that, on another occasion, she changed her shirt outside in front of Saliba and another waitress, LaDina Hall ("Hall").  With regard to that instance, Smith claims that she was wearing a bathing suit top under her shirt, which she did not remove while changing.  Defendant, however, contends that Smith removed both her shirt and her bra in the presence of Saliba and Hall, and that Smith "twisted both nipples to make them hard" before putting on her other shirt.  (Aff. of LaDina Hall, Def.'s Mot for Summ. J., Dkt. # 49, Ex. M.)  Although Fugate affied that on another occasion she "observed [Smith] exposing what appeared to be parts of her breast to other patrons in the bar area one night," Smith denies that this behavior occurred. (Aff. of Bernie Fugate, Def's Mot. for Summ. J., Dkt. # 49, Ex. O.)

9

Smith's last day of work at Freddie's was August 11, 2001, the evening she alleges Saliba asked to see her bra and became verbally abusive when she refused.  The following day, she left for a short trip to Dallas and Six Flags Over Texas amusement park ("Six Flags") with her former husband and his daughter.[8]  When she returned to Oklahoma, her employment at Freddie's was terminated.  Smith testified at her deposition that when she called Freddie's to find out what days she was scheduled to work, Saliba informed her that she was no longer employed by Freddie's.  Defendant claims that Saliba told Smith she was being discharged  because she was serving drinks to her husband free of charge and stealing money from Freddie's.  Smith disputes this claim.  Smith asserts that the reason Saliba gave for her discharge was her inability to get along with Parry.[9]

In support of defendant's contention that Smith was fired for serving free drinks and taking money from Freddie's, Saliba affied that during Smith's employment, he became suspicious that she might be taking money.  David Smith, a frequent patron of Freddie's, affied that he observed Smith taking money for drinks and putting the money in her apron rather than in the cash register, and that he reported this behavior to Parry.  (See Aff. of David Smith, Def.'s Mot for Summ. J., Dkt. # 49, Ex. J.)  Saliba affied that, due to his suspicions, he asked Parry to watch Smith and make sure her tickets added up.  Saliba also affied that Parry "reported to me that it appeared Jodie Moser, another employee at Freddie's, would open up a table on the computer without putting anything on the

---

[8]     Smith has been divorced from her former husband, William Smith, since January 9, 2001.  However, she has continued to reside with William Smith, and still frequently refers to him as "my husband."

[9]     Another waitress, Jodie Moser ("Moser") was also fired about the same time as plaintiff.  Defendant asserts that Moser was also fired for serving free drinks and taking money from Freddie's.  Plaintiff claims that Moser was told that she was being fired because she could only work part-time.

10

ticket, [Smith] would then make drinks for the table, Jodie would collect the cash from the customer, and the ticket would be zeroed out.  Neither Jodie nor [Smith] turned any of this money over to Freddie's."  (Aff. of Rickey Saliba, Def.'s Mot for Summ. J., Dkt. # 49, Ex. D.)  Jerri Saliba also testified in her affidavit that Smith was fired for serving free drinks and for taking money from Freddie's.  Saliba claims that he told Smith that this was the reason she was being terminated, and that Smith offered nothing in her defense.

Smith, on the other hand, claims that she did not know that she was fired for taking money or serving free drinks until Bernie Fugate told her that when they saw one another at a convenience store.  She also denies serving free drinks to her husband and claims that she never wrongfully withheld money from Freddie's.

Saliba also claims that when he hired Smith, she told him that she had a liquor license, but she left it at home.[10]  He asserts that he asked her to bring the license in repeatedly, but Smith never complied.  Smith disputes these allegations.  She claims that when she was hired, she told Saliba that she did not have a liquor license, and was not sure that she could get one because of a previous conviction she had.  She asserts that Saliba told her not to worry about it, to apply for the license and wait to see what happened.  Smith testified at her deposition that she first called the prosecutor who handled her case to make sure that she was allowed to work at a bar, and he told her she could, so long as it was also an eating establishment.  Smith claims that she then sent in her application, along with an explanation of her felony conviction.  She claims that she never heard back from the ABLE

---

[10]    In the State of Oklahoma, a person is required to have a liquor license form the Alcoholic Beverage Laws Enforcement ("ABLE") Commission in order to serve alcoholic beverages. (See Aff. of Marta Patton, Deputy Director of the ABLE Commission, Def.'s Mot. for Summ. J., Dkt. # 49, Ex. G at 1.)

11

Commission, but that Saliba told her not to worry about it.  It is undisputed in the record before the Court that the ABLE Commission has no record of receiving an application for a liquor license from Smith.  (See Aff. of Marta Patton, Deputy Director of the ABLE Commission, Def.'s Mot. for Summ. J., Dkt. # 49, Ex. G at 1.)  A representative from the ABLE Commission also affied that Smith would have been unable to obtain a liquor license due to her prior conviction.

Following her termination from Freddie's, Smith began working at J-W Measurement around December 24, 2001.  While employed at J-W Measurement, Smith earned between $27,000 and $41,000 annually.  On September 17, 2004, Smith's employment with J-W Measurement was terminated because she told her supervisor, "Kiss my ass."  (Dep. of Pl., Def.'s Mot. for Summ. J., Dkt. # 49, Ex. B at 50-51.)

Smith filed a complaint regarding her allegations of sexual harassment with the Oklahoma Human Rights Commission (OHRC) on January 18, 2002.  On September 17, 2003, the OHRC filed a "determination," concluding that there was reasonable cause to believe that Smith had been subjected to sexual harassment at Freddie's.  Smith commenced the instant lawsuit on February 19, 2004.

### III.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 317.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'"  <u>Id</u>. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could

reasonably find for the plaintiff."  <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court

is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law."  <u>Id</u>. at 250.  In its review,

the Court construes the record in the light most favorable to the party opposing summary judgment.

<u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

**IV.**

**A.       Hostile Work Environment**

Title VII prohibits an employer from discriminating against an employee on the basis of sex

"with respect to [her] compensation, terms, conditions, or privileges of employment."  42 U.S.C. §

2000e-2(a)(1).   Smith bases her Title VII sexual harassment claims, in part, on hostile work

environment.  To establish that she was subjected to a hostile work environment, Smith must prove

the following elements: "(1) she is a member of a protected group; (2) she was subject to unwelcome

13

sexual harassment; (3) the harassment was based on sex; and (4) [due to the harassment's severity or pervasiveness,] the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."[11]  Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1262-63 (10th Cir. 2005) (citation omitted) (alteration in original).   When considering whether the plaintiff has met her burden, the Court "must determine the existence of sexual harassment in light of 'the record as a whole' and 'the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" Meritor Sav. Bank v. Vinson, 477 U.S. 57, 69 (1986) (quoting 29 CFR § 1604.11(b)(1985)).

In the instant case, viewing the record in the light most favorable to the plaintiff, defendant does not contest that Smith can prove the first and third elements listed above, and therefore the Court may consider those elements established.  Defendant claims that Smith is unable to prove the second element because she cannot prove that the harassment complained of was unwelcome. Defendant then argues that Smith cannot establish the fourth element, because she cannot show that the alleged harassment was subjectively offensive to her.[12]   Defendant also contends that Smith cannot prevail because she "has presented no evidence other than her own conclusory testimony to establish that she was subjected to a hostile work environment."  (Def.'s Mot. for Summ. J., Dkt.

---

[11]     Some courts include a fifth element, that the employer knew or should have known of the harassment and failed to take proper remedial measures.  Here, there is no question that the employer, Freddie's Inc., knew of the harassment and failed to take remedial measures, because any harassment that occurred was perpetrated by Saliba, the owner and operator of the business.

[12]     As noted above, defendant also asserts that Smith cannot establish that the conduct complained of constitutes objectively offensive behavior.  However, defendant concedes that Smith's testimony creates a genuine issue of fact with regard to that issue.  Therefore, the Court need not address whether plaintiff has established that the environment at Freddie's was objectively hostile and offensive to women.

14

# 49, at 18.)   The Court will first address defendant's argument regarding the sufficiency of plaintiff's evidence in general, and will then address Defendant's arguments regarding Smith's ability to prove the individual elements in turn.

i.      Sufficiency of Plaintiff's Evidence

Defendant, citing <u>Pittman v. Continental Airlines, Inc.</u>, 35 F. Supp. 2d 434, 442 (E.D. Pa. 1999), argues that Smith has offered no evidence beyond her own conclusory testimony to support her claim that defendant subjected her to a hostile work environment.  In <u>Pittman</u>, the court found that the plaintiff's evidence was insufficient because the only evidence plaintiff offered in support of her claim of sexual harassment consisted of "conclusory statements in her deposition, which <u>reveal little detail</u> about the alleged acts of discrimination."  <u>Id.</u> (emphasis added).  Moreover, the Court found that the evidence supplied by the plaintiff failed to demonstrate that the conduct she complained of rose to the level of an objectively hostile work environment, as the plaintiff merely stated that she "occasionally encountered individuals who inquired about her personal life and [who] extended conversations about personal relationships to a 'graphic' level."  <u>Id.</u>

Such is not the case with Smith.  It is true that Smith could not always point to specific instances of harassment in her deposition.  However, the Court finds that her testimony did not lack detail and, when viewed in the light most favorable to her, was sufficient to show harassment, as discussed below. <u>See, e.g.</u> <u>Dey v. Colt Constr. & Dev.</u>, 28 F.3d 1446 (7th Cir. 1994) (five specific incidents, combined with plaintiff's testimony that harassment occurred on a daily basis, enough to survive summary judgment).  For example, Smith testified that Saliba's use of abusive and offensive language occurred more or less on a daily basis.  While this testimony is not particularly specific as to time, Smith testified as to the exact words used by Saliba when he engaged in such behavior.

15

Similarly, when Smith was questioned about Saliba allegedly touching her in an inappropriate manner, she did not recall specific occasions (other than the time he asked whether she was wearing underwear). She did, however, recall the way he touched her. Moreover, Smith did testify as to numerous specific instances when Saliba allegedly engaged in offensive behavior, detailed by the Court in the recitation of facts. Viewing the record as a whole, the Court finds that Smith has presented evidence beyond her own conclusory testimony to support her claim that defendant subjected her to a hostile work environment.

Defendant also argues that Smith offers no evidence other than her own testimony in support of her claims. In this regard, the Court notes that a plaintiff's own testimony may be enough to survive summary judgment in a harassment or discrimination case. See Jackson v. Univ. of Pittsburg, 826 F.2d 230, 236 (3rd Cir. 1987) ("There is simply no rule of law that provides that discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment."). Indeed, the very nature of sexual harassment lends itself to secrecy so that, in many cases, there may be no witness other than the victim and the perpetrator. The Court also notes that defendant repeatedly calls into question Smith's credibility in its motion for summary judgment. The Court agrees that the sexual harassment claims here involve important determinations of credibility. That is precisely why questions of fact with regard to such claims are best decided by the fact finder at trial. See Meritor, 477 U.S. at 68.

16

ii.     Unwelcomeness

Defendant argues that Smith cannot show that Saliba's conduct was unwelcome and therefore defendant is entitled to judgment as a matter of law on plaintiff's hostile work environment claim.

Proof that the conduct complained of was unwelcome is the gravamen of any sexual harassment claim. See Meritor, 477 U.S. at 68. "In order to constitute harassment the conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." Ammon v. Baron Automotive Group, 270 F. Supp. 2d 1293, 1306 (D. Kan. 2003) (internal quotation and citation omitted).  The relevant inquiry is whether, in light of the totality of the circumstances, plaintiff indicated by her conduct that the conduct complained of was unwelcome. See Meritor, 477 U.S. at 68.  In this regard, the Supreme Court has stated that "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact."  Id.

Defendant argues that plaintiff cannot prove that the conduct of which she complained was unwelcome because "[s]he actively contributed to the sexually explicit environment in the workplace."  (Def.'s Mot. for Summ. J., Dkt. # 49, at 15.)  Specifically, defendant argues that because Smith dressed provocatively, engaged in provocative behavior, used offensive language, including the word "fuck," and on one occasion told Saliba she liked the way her breasts looked in a shirt, she "engaged in actions similar to those that she now claims were offensive to her," and so cannot prevail on her hostile work environment claim.  (Id. at 18-19.)  The Court does not agree.

17

Courts have held that a plaintiff's provocative speech or dress may be relevant in looking at the context in which alleged sexual harassment occurred.  See, e.g., Mangrum v. Republic Industries, Inc., 260 F. Supp. 2d 1229, 1248 (N.D. Ga. 2003).  However, a "[p]laintiff's use of foul language or sexual innuendo in a consensual setting does not waive her legal protections against unwelcome harassment."  Burns v. McGregor Elec. Industries, Inc., 989 F.2d 959, 963 (8th Cir. 1992) (internal quotation and citation omitted).  Thus, courts have held that it is improper for a court to find that harassment was not unwelcome on the basis that the plaintiff is the sort of person who could not be offended by sexual or offensive comments and therefore welcomes such comments generally.  See Swentek v. USAIR, Inc., 830 F.2d 552, 557 (4th Cir. 1987).  Rather, the relevant question is whether the "plaintiff welcomed the particular conduct in question from the alleged harasser."  Burns, 989 F.2d at 963 (emphasis added).  As the Supreme Court has noted, determining the answer to that question depends largely on determinations of credibility, which is best left to the province of the jury.  See Meritor, 477 U.S. at 68.

In the instant case, even when the evidence is viewed in the light most favorable to the plaintiff, there is no question that Smith sometimes wore clothing that exposed her cleavage, flirted with male customers, and used foul language.  Smith has even admitted that she may have told Saliba, on one occasion, that she liked the way her breasts looked in a particular shirt.  While evidence of her behavior and provocative dress may be relevant to determine whether she found Saliba's alleged conduct offensive, such evidence is not the determining factor.  The question is whether Smith welcomed the particular conduct about which she complains.  If Smith's only complaint was the Saliba made comments about her body, it is possible that she could not prevail on her hostile work environment claim, given her own admitted behavior.  Likewise, if Smith's only

18

complaint was that Saliba used foul language in the workplace, she may have difficulty showing that such behavior was unwelcome, given her own use of expletives.

However, the Court need not decide those questions here, because Smith's complaints are not so limited. Smith alleges not only that Saliba made comments about her body, but also that he sexually propositioned her on several occasions. She testified that those advances were unwelcome to her. Smith further claims that Saliba not only used foul language, but also used language that was offensive and degrading to women in particular, such as "bitch," "whore," and "cunt."[13] "These sexual epithets have been identified as intensely degrading to women," Winsor v. Hinckley Dodge, Inc., 79 F.3d 996 (10th Cir. 1996), and there is no evidence that Smith did not mind the use of such terms, or that she used similar language in reference to women. Smith also alleges that Saliba's harassment did not stop at words, but included sexually offensive touching. Smith claims that Saliba's physical contact was also unwelcome to her.

The Court does not find, as a matter of law, that plaintiff welcomed Saliba's alleged offensive behavior by wearing low-cut shirts, using foul language, and flirting with customers. Defendant may argue that Smith never indicated to Saliba that the actions she complains of were unwelcome to her, but that has not been established on the record before the Court. Where the facts regarding whether the plaintiff indicated that the alleged offensive behavior was unwelcome are in dispute, determining the answer to that question is best left to the province of the jury. See Meritor,

---

[13]     Even with regard to the word "fuck," which Smith admits she used frequently, Smith testified that whether she found the word offensive depended upon the manner in which it was used. Specifically, when Smith was asked if she found Saliba's use of the word offensive, she testified, "Depending on how he said it . . . . Like if he dropped a glass and said fuck, no. But when he said, do you want to fuck, yes. When he said you fucking cunt, do what I say, yes, it offended me." (Dep. of Pl., Def.'s Mot. for Summ. J., Dkt. # 49, Ex. B at 119.)

477 U.S. at 68; cf. Mangrum, 260 F. Supp. 2d 1229 (plaintiff taped an entire conversation regarding alleged harassment, which eliminated potential questions of fact regarding plaintiff's reaction to alleged harasser's behavior). With regard to whether Saliba's alleged harassment was unwelcome to Smith, the Court finds that genuine issues of material fact exist and therefore summary judgment is not warranted on Smith's hostile work environment claim.

      iii.     Offensiveness

Defendant next argues that it is entitled to summary judgment because Smith cannot prove that the conduct about which she complains was subjectively offensive to her.

Determining whether the alleged harassment was offensive requires the court to analyze the fourth element of a hostile work environment claim, that is, whether "[due to the harassment's severity or pervasiveness,] the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." Dick, 397 F.3d at 1262-63 (alteration in original). This "test is a disjunctive one, requiring that harassing conduct be sufficiently pervasive or severe to alter the terms, conditions, or privileges of [a plaintiff's] employment." Smith v. Northwest Fin. Acceptance, 129 F.3d 1408, 1413 (10th Cir. 1997) (emphasis in original). Factors for the Court to consider in making this determination include the frequency and severity of the discriminatory conduct, whether it is physically threatening, humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). However, the plaintiff "need not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d at 1257, 1261 (10th Cir. 1998). In general, "the severity and pervasiveness evaluation is particularly unsuited for summary judgment

because it is quintessentially a question of fact."   <u>Ammon</u>, 270 F. Supp. 2d at 1307 (internal quotation and citation omitted).

Smith has alleged that Saliba called her and other female employees "bitch," "whore," and "cunt" almost on a daily basis over the course of the four and a half months she was employed at Freddie's.  She alleges at least three specific incidences when such name-calling occurred: once when Saliba introduced her to his brother; once when she refused to show him her bra; and once when he called Parry a "cunt" in front of the entire wait staff.  There is no evidence other than her testimony to support these allegations, but, if true, repeated use of such overtly sexual epithets in reference to an employee can certainly be characterized as harassment.  <u>See</u>, <u>e.g.</u>, <u>Winsor v. Hinckley Dodge, Inc.</u>, 79 F.3d 996, 1000 (10th Cir. 1996).  When the use of such language is tolerated,  it can also be characterized as creating a hostile work environment.  <u>Id.</u> at 1002; <u>Gross v. Burggraf Const. Co.</u>, 53 F.3d 1531, 1543 (10th Cir. 1995) ("[i]t is beyond dispute that evidence that a woman was subjected to a steady stream of vulgar and offensive epithets because of her gender would be sufficient to establish a claim under Title VII based on the theory of hostile work environment.").

Moreover, the harassment complained of need not be directed at the plaintiff alone.  Addressing this issue, the Tenth Circuit has held,

> The answer seems clear: one of the critical inquiries in a hostile environment claim must be the <u>environment</u>.  Evidence of a general work atmosphere – as well as evidence of specific hostility directed toward the plaintiff – is an important factor in evaluating the claim.  Indeed, such evidence could be critical to a plaintiff's case, where a claim of harassment cannot be established without a showing of the isolated indicia of a discriminatory environment . . . . Even a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere where such harassment was pervasive.

Hicks v. Gates Rubber Co., 833 F.2d 1406, 1416-17 (10th Cir. 1987) (internal quotations and citations omitted) (emphasis in original).[14]  When making a hostile work environment claim based in part of the harassment of others, a plaintiff may only rely on evidence relating to harassment of which she was aware, and which occurred during the time that she was allegedly subjected to a hostile work environment.  Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782 (10th Cir. 1995).  Smith has complied with these requirements.   In support of her hostile work environment claim, Smith relies in part on the harassment of other female employees that Smith personally witnessed, and that occurred while Smith was employed at Freddie's.  Thus, the Court may consider Smith's evidence of this harassment when deciding whether she has presented sufficient evidence to support her hostile work environment claim.

As noted above, courts have widely recognized words such as those allegedly used by Saliba as "intensely degrading, deriving their power to wound not only from their meaning but from the disgust and violence they express phonetically."  Winsor, 79 F.3d at 1000 (quoting Katz v. Dole, 709 F.2d 251, 254 (4th Cir. 1983) (internal quotations omitted).  Smith testified that she was offend by Saliba's use of such words.  As noted above, while Smith admitted that she used expletives, there

---

[14]     The Tenth Circuit has suggested that evidence of abusive or offensive behavior towards other women is properly considered when evaluating the objective offensiveness of the work environment. See Jessen v. Babbitt, 202 F. 3d 282, 1999 WL 1246915 at *4 (10th Cir. Dec. 23, 1999) (unpublished decision).  The Court finds that such evidence may properly be considered here, where defendant has asserted that plaintiff could not show that the environment was objectively hostile, and where plaintiff has claimed that she was personally offended by Saliba's treatment of other women at work.  Moreover, consideration of this evidence allows the Court to follow the Supreme Court's mandate to consider the totality of the circumstances when analyzing a hostile work environment claim. See Meritor, 477 U.S. at 69.

is no evidence in the record that Smith herself used the degrading terms allegedly used by Saliba in reference to women, and so would not find such language offensive on a subjective level.

Smith also describes at least two incidents in which Saliba made vulgar and sexually explicit comments to her related to performing a sexual act. This type of conduct clearly qualifies as offensive, hostile, and abusive. As noted above, Smith admits to engaging in some sexually suggestive behavior in the workplace. However, viewing the evidence in the light most favorable to plaintiff, the Court does not find that the record in this case establishes that Saliba's sexually explicit comments were not offensive to Smith. Smith testified that she was offended by the comments. A rational jury could consider these incidents serious enough to effect discriminatory changes in the terms and conditions of plaintiff's employment or characterize a workplace permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, when considered in connection with the alleged name-calling.

Finally, Smith has testified that Saliba touched her in a sexually offensive manner. As with the above incidents, Smith testified that she was offended such contact. A rational jury could certainly find that a supervisor creates a hostile work environment when he puts his hands underneath his female employee's shorts, pinches her buttocks, and slaps her buttocks while she is at work. Based on her testimony, a jury could also find that Smith was subjectively offended by such conduct.

Based on the above reasoning, the Court finds that the issues of whether Saliba created a hostile work environment and, if so, whether the environment altered the conditions of Smith's

employment or unreasonably interfered with her work performance, and so was subjectively offensive to Smith, are issues of fact for the jury.

**B.     Retaliation**[15]

A prima facie case of retaliation is established under Title VII if the plaintiff shows that: (1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action contemporaneous with or subsequent to the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action.  E.g., Hertz v. Luzenac American, Inc., 370 F.3d 1014, 1015 (10th Cir. 2004); O'Neal v. Ferguson Constr. Co., 237 F.3d 1248 (10th Cir. 2001).  The analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), guides the Court's review of Smith's retaliation claim. Thus, once the plaintiff has established her *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action.  At the summary judgment stage, once the defendant offers a legitimate reason, "it then becomes the plaintiff's burden to show that there is a genuine issue of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e. unworthy of belief."  Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).  If the plaintiff presents a *prima facie* case and produces evidence that the defendant's proffered reason is pretextual, then she can withstand a motion for summary

---

[15]     Defendant also argues that Smith cannot show that she was fired because she was female. In her response to the motion for summary judgment, plaintiff asserts that she is not claiming that she was fired because she was female.  Rather, she states that her claim is that she was fired for rejecting Saliba's advances and for "standing up to him."  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 13.)  Thus, the Court will construe Smith's claim that the termination of her employment was discriminatory under Title VII as a claim for retaliatory discharge in violation of Title VII, and will not address defendant's arguments regarding discrimination based on sex.

24

judgment, and is entitled to go to trial on the issue.  Id.  The plaintiff need not present direct evidence that the defendant was "motivated by an illegal discriminatory animus" to withstand summary judgment, because such animus may be inferred from the showing of pretext.  Id.

      i.   *Prima Facie* Case

In regard to plaintiff's retaliation claim, Defendant first argues that Smith is unable to establish a *prima facie* case of retaliation under Title VII.  Defendant asserts that Smith is unable to establish either that she engaged in protected opposition to Title VII discrimination, or that her termination was causally connected to such opposition, if the opposition did occur.  Defendant does not argue that the termination of Smith's employment was not an adverse employment action.

Smith claims that defendant retaliated against Smith because she refused to show Saliba her bra when he asked her to do so.  Defendant argues that Smith cannot prove that this incident occurred because she offers no evidence in support of it other than her own testimony.  The Court does not agree that Smith's own testimony is insufficient to withstand summary judgment.  Smith, in her deposition, testified to this episode in detail.  Specifically, she claims that she and Moser were discussing buying new undergarments, and that Saliba overheard their conversation.  (See Dep. of Pl., Def.'s Mot. for Summ. J., Dkt. # 49, Ex. B at 142.)  Smith testified that when Saliba heard them talking, he told Smith that he wanted to see her bra.  (Id.)  Smith further claims that when she refused to show him her bra, Saliba became belligerent and said, "Stupid bitch, you're just a tease, you're just a fucking cunt."  (Id.)  The Court finds that a rational jury could find, based on Smith's testimony, that this event occurred.

Defendant next contends that, even if the above incident occurred, Smith cannot establish a causal connection between her refusal to submit to Saliba's improper request and the termination

of her employment.  However, it is well-established that "[t]he requisite causal connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" <u>McGarry v. Bd. of County Com'rs</u>, 175 F.3d 1193, 1201 (10th Cir. 1999) (quoting <u>Burrus v. United Telephone Co. of Kansas, Inc.</u>, 683 F.2d 339, 343 (10th Cir. 1982)).  In the instant case, Smith's employment was terminated the next time she called Freddie's to obtain her schedule after the alleged incident where she refused to show Saliba her bra.  Defendant does not contest that Smith's refusal qualifies as protected conduct. Because Smith's termination occurred the next time she contacted Freddie's, only days after she engaged in the protected conduct, the Court finds that Smith has shown the requisite causal connection between the protected activity and the adverse employment action.

ii.      Pretext

Defendant next argues that, even if Smith is able to establish her *prima facie* case, summary judgment is still appropriate on her retaliation claim because defendant has offered a legitimate reason for her termination, and Smith cannot show that the proffered reason is pretextual.  Defendant asserts that Smith's employment was terminated because defendant had a good faith belief that Smith was giving her husband alcoholic drinks without charging him, and that Smith colluded with Moser to steal money from Freddie's by charging customers for drinks and not turning the money collected over to the restaurant.  However, Smith asserts that Saliba told her that she was being fired because she did not get along with Parry.  Smith also claims that Saliba became more abusive toward her the more she resisted his sexual overtures.  She argues that the fact that defendant give a different reason for her termination than the reason it gives now, coupled with her testimony that

Saliba's treatment of her worsened as she began to stand up to him, is enough to raise an inference that the proffered reason is unworthy of belief.

In support of her argument, Smith cites <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000), for the proposition that in a retaliation case, "the plaintiff may attempt to establish that [she] was the victim of discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" <u>Id.</u> at 143 (quoting <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)). Thus, a plaintiff may avoid summary judgment if she can establish a *prima facie* case of retaliation, along with sufficient evidence for a jury to find that the defendant's proffered explanation is unworthy of belief, because the jury may "infer the ultimate fact of discrimination from the falsity of the employer's explanation." <u>Id.</u>

In the instant case, the Court finds that genuine issues of fact remain regarding the reason given by defendant for the termination of Smith's employment. Therefore, the Court finds that it is not possible to determine, as a matter of law, whether defendant's proffered reason for terminating Smith's employment was a pretext for retaliation against Smith for resisting Saliba's sexual advances. Accordingly, defendant's motion for summary judgment on plaintiff's retaliation claim is hereby denied.

## C.    Limitations on Damages

Defendant argues that, if plaintiff prevails on any of her claims, her damages should be limited. First, defendant argues that Smith' s damages should be cut off as of December 24, 2001, the day Smith began working for J-W Measurement, because Smith earned more there than she earned at Freddie's. In her response, Smith argues that, while defendant's obligation to pay back pay damages was "suspended" during the time Smith was employed at J-W Measurement,

defendant's obligation to pay plaintiff back pay resumed at the time the job at J-W Measurement ended.  The Court finds no merit in plaintiff's argument in this regard.  Smith admitted that the termination of her employment at J-W Measurement was her own fault.  She offers no authority for the proposition that her right to back pay from defendant resumed following her termination from J-W Measurement.  Thus, the Court finds that any back-pay damages that may be awarded to plaintiff shall be limited to the period between the termination of her employment at Freddie's until December 24, 2001, the date her employment with J-W Measurement commenced.

Second, defendant argues that, if Smith prevails on her claims, she is not entitled to reinstatement or front pay because defendant would have terminated Smith's employment anyway, based on after-acquired evidence.  On June 1, 2004, defendant learned through discovery that Smith did not have a liquor license and could not obtain one due to a prior felony conviction. (See Aff. of Marta Patton, Deputy Director of the ABLE Commission, Def. Mot. for Summ. J., Dkt. # 49, Ex. G at 1.)  In the State of Oklahoma, one is required to have a liquor license in order to serve alcohol. (Id.)  Thus, defendant asserts that it would have terminated Smith from her position as a bartender and waitress based on her inability to obtain a liquor license.  While plaintiff contends that Saliba knew she did not have her liquor license, she does not contest the facts set forth in Patton's affidavit.

When faced with a similar issue, the Supreme Court has stated that "[o]nce an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer." McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 363 (1995).  Once a legitimate reason for terminating the plaintiff's employment has been discovered, "[i]t would be

28

both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." Id.

In the instant case, the Court finds that because defendant could have legitimately terminated Smith's employment upon discovering that she is unable to obtain a liquor license, front pay and reinstatement are not appropriate remedies, should plaintiff prevail on her claims at trial.

Based on the above reasoning, defendant's motion for summary judgment is hereby granted with regard to defendant's requests for limitations on plaintiff's damages.

## IV.

**IT IS THEREFORE ORDERED** that defendant Freddie's Incorporated's Motion for Summary Judgment (Dkt. # 49) is hereby **granted in part and denied in part**: it is denied as to the hostile work environment and retaliation claims; it is granted as to the limitations on damages.


**DATED** this 6th day of July, 2005.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT